(30 Misc. Rep. 257.)

### SHIMMEL v. MORSE et al. (two cases).

(Supreme Court, Special Term, New York County. January, 1900.)

TRUSTS—EXECUTION—BREACH OF TRUST—ACQUIESCENCE OF CESTUI QUE TRUST
—CONFIRMED BY DECREE.

Property devised to executors in trust, to be equally divided among
the executors and three other children of the testatrix, was by the ac-
quiescence of all their children sold on time to one of their number, and
mortgages taken back for the full amount of the purchase price; it being
agreed that the mortgages should be reported by the executors as assets,
to apply in part payment of a claim held by one of the executors against
the testatrix. On the final accounting before the surrogate the mortgages
were so applied, and the executors discharged from further liability. The
plaintiff received some material advantage from the plan by which the
property was disposed of, acquiesced in the result for over 20 years, and
made no attack on the decree of the surrogate on the final accounting.
*Held*, that plaintiff had lost her right to insist upon a different execution
of the trust.

Actions by Cordelia F. Shimmel against Emily Morse and others
for the construction of a trust. Judgments for defendants.

Richard P. Lydon and Amasa A. Redfield, for plaintiff.
Seth Sprague Terry, for defendants.

RUSSELL, J. In stating the result reached in these cases, it is
unnecessary to allude to many of the details of the transactions af-
fecting the title of the Thirty-Fourth street and Hudson street prop-
erties, which the plaintiff now seeks to reach an interest in, arising
out of events occurring more than 20 years ago. Her mother, Emilie
Ostheim, died in May, 1874, seised of these premises, and by her will,
probated June 20, 1874, devised to her daughter Mrs. Emily Morse
and her son Felix Ostheim, as trust executors, these properties, to
divide the proceeds among her five children. The main controversy
is over the Thirty-Fourth street property, which is conceded to have
been worth at the time Mrs. Ostheim died the sum of $22,000, and
was subject to a mortgage of $11,000. There were family reasons
why this house should be kept in the ownership of one of the children,
and not be sold to a stranger. No debts to outsiders intervened to
prevent the five children from making such arrangement as they saw
fit. Accordingly it was planned that the executors should not sell
to a purchaser for cash, but use should be made of a claim which Mrs.
Morse, executrix, held against the deceased mother, a conveyance
should be made to the son Albert Ostheim, mortgages given back
to the amount of $14,350.67, and such mortgages should be reported
by the executors as assets to apply in part payment of the claim of
the executrix, Mrs. Morse. On the 14th of July, 1877, Mrs. Morse
and Felix Ostheim, as executors, conveyed the premises accordingly
to Albert Ostheim, and the arrangement was carried out as con-
templated. By subsequent conveyances the title became vested in
the defendant Mrs. Richmond, who is the daughter of Mrs. Morse.
Her title is subject to a mortgage given for value to the Bowery Sav-
ings Bank, and also to certain mortgages to her mother, Mrs. Morse,
reaching back to the original consideration of the mortgages given

in part satisfaction of Mrs. Morse's claim against Mrs. Ostheim. On the 10th day of October, 1882, Mrs. Morse and Felix Ostheim, executrix and executor, accounted before the surrogate of the county of New York, charging themselves with the two mortgages to the amount of $14,350.67; and it was on such accounting adjudged that the executors were released from any further liability, and the balance (treating the mortgage as assets), of $9,384.98, should be applied upon the claim of Mrs. Morse, of $15,446.15, with interest from February 28, 1874. No steps have ever been taken to set aside this judicial determination. The details of the claim of Mrs. Morse against her mother were not given in evidence on this trial by original proof, but that claim had some substantial foundation, and was verified by the plaintiff before the surrogate. That plaintiff has received material benefits from her sister Mrs. Morse and the daughter Mrs. Richmond, in contributions of money and otherwise, and a home with them in their Thirty-Fourth street property. The dealings of the parties for over 20 years, including all of those who were interested in the due execution of the will of Mrs. Ostheim, have been governed by the assumed acceptance of the transactions by which the title eventually came to Mrs. Richmond. It is very plain that the plaintiff, or either of the others interested, could have strenuously objected to the manner in which the trust was executed by the executor and executrix, if such choice had been made, and it is not probable that such an execution would have been contemplated without the willing consent of all. The plaintiff was an active participant in the manner of its accomplishment, and has received material advantages, flowing from her assent to its execution. She could not lend a willing hand to take the property from the estate, vest it in her brother, eventually in her niece, and at the same time carry in the other hand a weapon to strike down its validity when, from subsequent humor or interest, she chose to repudiate the acts which had been executed, and insist upon a contrary course, which might have been originally taken, but for her own willing participation. It is also apparent that the decree of the surrogate was of binding force upon her as a party, and as one who helped to procure its rendition. No doubt, a hidden device by which a trustee secures ultimately to himself property, which by duty he was forbidden to transfer directly to himself, will not be protected by the adjudication of the surrogate on his accounting as executor. Fulton v. Whitney, 66 N. Y. 548. But the decree of the surrogate reaches to settle forever all questions which come properly before him for decision, even though the effect of it may shelter an executor from breach of trust duty. Insurance Co. v. Schwaner, 36 Hun, 373, affirmed on opinion of general term in 101 N. Y. 681. Here the plaintiff affirmed to the surrogate that the claim of the creditor, Mrs. Morse, was a just one. The funds realized by the sale of the property were placed subject to the order of the surrogate. With willing acquiescence of all who were interested in that fund, or the property from which it was derived, the portion which was left after paying other charges was devoted to part satisfaction of the claim of Mrs. Morse. It becomes, therefore, an adjudication of binding force upon all the parties that the amount of the claim was as stated, its

origin just, and the proceeds of the real property which had passed away from the estate were properly devoted to the claim of Mrs. Morse. The conclusion as to the legal effect of that decree necessarily follows,—that the corpus of the real property had passed into personalty, and was lawfully disposed of by a competent tribunal. We therefore see that by choice as to the methods of disposition of property of her mother, by ratification, by the absence of any legal action for a period longer than that fixed by the statute of limitations, and by adjudication of the surrogate's court, the plaintiff's original right to insist upon a different method of execution of the trust created in 1874 has entirely passed away.

The questions arising as to the Hudson street property are of smaller importance. That property is stipulated to have been worth the sum of $10,000, and it was subject to a mortgage of $5,200. It was conveyed to Mrs. Richmond, and the consideration of the conveyance paid to satisfy a part of the balance owing to Mrs. Morse. The considerations which determine the result of the matter of the Thirty-Fourth street property so largely pertain to the transaction in regard to the Hudson street property, that a similar result must be reached. Judgment for defendants in accordance with this opinion, with costs.

Judgment for defendants, with costs.